

David L. Bissett
United States Bankruptcy Judge

# IN THE UNITED STATED BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LESTER O. PAUGH, JR., | ) | Case No. 1:21-bk-00673 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| RUTH E. GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 1:22-ap-00008 |
| | ) | |
| LESTER O. PAUGH, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

On January 25, 2023, the court convened an evidentiary trial regarding the complaint of Ruth E. Graham (the "Plaintiff"), *pro se*, against Lester O. Paugh (the "Defendant") under § 523(a)(2)(A) of the Bankruptcy Code. The Plaintiff alleges that her state court judgment against the Defendant is nondischargeable. The Defendant contends that the Plaintiff's judgment is subject to his Chapter 7 discharge. In that regard, he relies, at least in part, on the existence of and his membership in L & C Construction, LLC, (herein "L & C"), an entity he organized in 2020.

For the reasons stated herein, the court holds that the Plaintiff's judgment is nondischargeable.

### I.   BACKGROUND

On April 23, 2020, the Defendant registered a limited liability company, L & C, with the West Virginia Secretary of State. (Defendant's Exhibit No. 1). In its registration, its stated business

1

purpose is "Construction of Buildings- Residential Building Construction (new single-family & multifamily housing, new housing, residential remodelers)." *Id*. The Plaintiff and the Defendant first communicated in early 2021 to discuss the Plaintiff's requested construction of a chicken coop, six replacement windows, and re-routing residential waterlines and estimates in that regard. Before the parties' Construction Contract Agreement (the "Agreement"), the Plaintiff and the Defendant exchanged text messages. On or about April 27, 2021, through April 29, 2021, the Defendant texted the Plaintiff, in pertinent part, stating he: "[was] licensed and insured . . . ," "would [] do [] the work," and was "more than happy to complete [the Plaintiff's] projects for [her]." At one point, the Plaintiff texted the Defendant that she was "a bit nervous. You seem legit," to which the Defendant responded, "we are definitely a legit business" with "plenty of past references from jobs completed . . . ." (Plaintiff's Exhibit 5). Indeed, the Defendant testified at trial that he had several years of experience presumably related or similar to the requested services to be performed for the Plaintiff. On April 29, 2021, the Plaintiff and the Defendant entered into the Agreement. (*See* Plaintiff's Exhibit 2, Defendant's Exhibit 3). Of relevance, the Agreement identified the Defendant as a Contractor,[1] $2,887.50 was due at signing, and the total price was $5,775. The Plaintiff obtained and remitted to the Defendant a cashier's check for the amount due at signing.

Soon thereafter, the Plaintiff instituted a breach of contract action in state court: ultimately, on August 10, 2021, the Circuit Court of Preston County, West Virginia, granted the Plaintiff a default judgment against the Defendant for $5,775. (Defendant's Exhibit 7). On September 23, 2021, the Circuit Court additionally held that the Plaintiff was entitled to court costs and fees (*i.e.,* $296), bringing the total judgment amount to $6,071. (Defendant's Exhibit 8). On December 29, 2021, the Defendant filed for relief under Chapter 7 of the Bankruptcy Code. On April 6, 2022, the Plaintiff filed this adversary complaint: liberally construed, it asserted nondischargeability under § 523(a)(2)(A) of the Bankruptcy Code. On April 12, 2022, the court granted the defendant a discharge otherwise.

## II. ANALYSIS

The Plaintiff contends that the Defendant misrepresented himself as a Contractor when the parties entered into the Agreement. Specifically, the Agreement identities the Defendant as

---

[1] To clarify, the use of Contractor (*i.e.,* capitalized) refers to a person that qualifies under the West Virginia Contractor Licensing Act (the "Act").

2

Contractor. The Plaintiff therefore asserts nondischargeability of her state court judgment pursuant to § 523(a)(2)(A). Construing her arguments liberally, the Plaintiff contends that under false pretenses, the Defendant held himself out as a Contractor and induced her to employ him for her proposed project. The Defendant centers his defense on L & C's business license.

Section 523(a)(2)(A) excepts from discharge any debt for, among other things, "money, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud . . . other than a statement respecting the debtor's . . . financial condition." In the Fourth Circuit, a creditor asserting a claim under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence— namely, "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 218 (4th Cir. 2007). The Supreme Court expanded the application of § 523(a)(2)(A) by concluding that the inclusion of "actual fraud" within the provision indicates a clear Congressional intent to except from discharge debts incurred through fraudulent actions distinct from false representations. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356 (2016). Thus, the five-step analysis set forth in *Nunnery* remains applicable to determinations regarding dischargeability if property was allegedly obtained by false representation or false pretenses.

An essential element is that the debtor acted with the intent to deceive. *Boyuka v. White (In re White)*, 128 Fed. Appx. 994, 998 (4th Cir. 2005) (holding that to except a debt from discharge under § 523(a)(2)(A), the movant must show, inter alia, that "the debtor's conduct was with the intention and purpose of deceiving or defrauding the creditor.") However, because a debtor will rarely, if ever, admit to acting with an intent to deceive, intent may be inferred from the totality of the circumstances. *In re Polce*, No. 18-AP-28, 2018 WL 5794434, at *3 (Bankr. N.D.W. Va. Nov. 5, 2018) (citing *In re White*, 128 F. App'x 994, 999 (4th Cir. 2005)).

Additionally, the Supreme Court concluded that there is no reason to doubt Congress's intent to adopt a common-law understanding regarding the requirement of justifiable reliance under § 523(a)(2)(A). *Field v. Mans*, 516 U.S. 59, 70 (1995). In that regard, the plaintiff-creditor must first prove actual reliance and the court thereafter determines if such was justifiable under the circumstances. *In re Kitzmiller*, 206 B.R. 424, 426 (Bankr. N.D.W. Va. 1997).

Finally, the phrase "to the extent obtained by" in § 523(a)(2)(A) does not necessarily impose limitation upon which "any debt" arising from fraud is excepted from discharge. *See Cohen*

*v. de la Cruz*, 523 U.S. 213, 219 (1998). Once the court establishes that the services and/ or money, for example, was obtained by false pretenses or misrepresentation, then "any debt" arising therefrom is excepted from discharge. *Id*. at 219. Said differently, full liability stems from the finding of misrepresentation and includes further debt stemming therefrom.

Notably, the party asserting nondischargeability bears the burden by a preponderance of the evidence that the debt is nondischargeable under § 523(a)(2)(A), *Grogan v. Garner*, 498 U.S. 279, 291 (1991), because the court narrowly construes exceptions to discharge in favor of providing debtors with a fresh start. *See Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

As is relevant here, the West Virginia legislature defined Contractor in the West Virginia Contractor Licensing Act (the "Act") as

> a person who in any capacity for compensation, other than as an employee of another, undertakes, offers to undertake, purports to have the capacity to undertake or submits a bid to construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, structure or excavation associated with a project, development of improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith, where the cost of the undertaking it two thousand five hundred dollars or more.

Law of April 23, 2021, W.Va. Code Ann. § 21-11-3(c) (repealed June 15, 2021). Correspondingly, those statutorily qualifying as a Contractor must be licensed consistent with the Act.[2]

Here, the court finds that the Plaintiff satisfied her burden and proved by preponderant evidence that her judgment should be nondischargeable under § 523(a)(2)(A). First, under the terms of the Agreement, the Defendant was required to be a licensed Contractor. Second, the Defendant undoubtedly held himself out to be a Contractor. The Defendant's texts that he was "licensed and insured" and a "legit business" relate to L & C. Clearly, the Plaintiff was led to believe, as any consumer looking for a Contractor for construction services would infer, that she was dealing with a licensed Contractor when he stated that he was "licensed" and "insured". Moreover, the Agreement identifies the Defendant personally as Contractor and makes no mention of L & C. Despite the Defendant's argument otherwise, a business license obtained by L & C, does

---

[2] Despite the 2021 re-enactment of the Act, the current applicable law (*i.e.,* W. Va. Code Ann. § 30-42-6(a)) is identical to the former statutory counterpart (*i.e.,* § 21-11-6(a)).

not satisfy the licensing requirement under the Act. Therefore, the record clearly establishes that the Defendant misrepresented himself as a licensed Contractor.

Additionally, the Defendant knew his representations to the Plaintiff were false. During direct testimony, the Defendant reasserted that he was "licensed and insured," but admitted to never being a licensed Contractor. Rather, he clarified that L & C possessed a business license but not a Contractor's license. The Defendant's possible ignorance of the law does not equate to an alleviation or minimization of affiliated requirements. Further, based on the record, the Court finds it unlikely that the Defendant was unaware of the requirement to have a Contractor's license for the proposed project based on his several years of providing handy man services.

In an apparent red herring, the Defendant directed attention to the 2021 re-enactment of the definition of Contractor in the Act as a defense to not being a Contractor as he purported to be in the Agreement. Although the re-enactment occurred in 2021, it was not effective until June 2021. And the re-enactment's Contractor license carve-outs are not retroactive.[3] The Agreement was executed on April 23, 2021, such that the proposition that the Defendant did not need a Contractor's license grossly misses the mark. Further, this undoubtedly infers an intent to deceive based upon the totality of the circumstances. At the very minimum, the Defendant knew he was not a licensed Contractor. Because the Defendant held himself out as a Contractor, his implicit representations, including the Agreement's explicit identification of him as Contractor, expose his knowledge that the representations were false and an intent to deceive.

Furthermore, the Plaintiff actually relied upon the Defendant's statements, and, under the circumstances, this court finds such reliance justifiable. The Plaintiff presented credible exhibits and testimony regarding the reasonableness of her reliance. Namely, the Plaintiff's text message to the Defendant that she was "a bit nervous. You seem legit," and the Defendant's text response asserting "we are definitely a legit business" with "plenty of past references from jobs completed . . . ." The Defendant's response therein can be construed as reassurance that he was a Contractor. The proffered timeline of these text messages occurred immediately prior to the Agreement's execution. The Plaintiff relied upon the Defendant's statements and, thus, a justifiable reliance under the circumstances.

---

[3] W. Va. Code Ann. § 30-42-3(d) (West), among other things, excludes an individual performing residential work less than $5,000 from the definition of Contractor, thus, a Contractor's license is not required under those statutorily defined circumstances.

Ultimately, the Defendant's false representation, and the Plaintiff's justifiable reliance thereon, proximately caused the Plaintiff's damage as assessed by the state court. This court therefore finds the debt nondischargable under § 523(a)(2)(A).

## II.   CONCLUSION

Based on the foregoing, the court finds that under false pretenses and/or false representation the Defendant executed the Agreement. Therefore, pursuant to § 523(a)(2)(A), the Plaintiff's judgement from the Circuit Court of Preston County, West Virginia is excepted from the Defendant's standard discharge entered on April 12, 2022. An order in accordance with this Opinion will be entered pursuant to Fed. R. Bankr. P. 9021.